[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a thirty year marriage. There has been no issue of the marriage. The Court has the requisite jurisdiction and finds that the marriage has broken down irretrievably. The Court has carefully considered all of the statutory criteria enumerated in Connecticut General Statutes §§ 46b-81 (c) and 46b-82 in entering its orders in this matter.
The plaintiff is fifty-one and the defendant is fifty. Plaintiff has a college degree in marine sciences and the defendant has an associates degree in business management. Both parties have health problems none of which are life threatening. The defendant had open heart surgery in 1974, but has had no recurrence of the problems that she had at that time. She was also involved in an automobile accident and has claimed some residuary effects. The plaintiff's injuries are more substantial. He was also involved in an automobile accident wherein he received serious traumatic injuries. He received workers' compensation. The plaintiff testified that he had to have his knee replaced, and that he has a 10 percent permanent disability to his back, and a 17 1/2 percent permanent disability to his right knee. His workers' compensation benefits expire in August of 1999. Plaintiff has been working as a service center CT Page 11579 technician in Weston, Connecticut, and he testified he cannot handle the job because of its serious physical demands. He does work three days per week. He plans to move to California, and he testified that he has a girlfriend in California that he first met in 1966. He testified that he had no contact with her during the course of the marriage but, at the time of the separation in the present matter, that she had called him. He also testified that he had an offer of a position in California, but was not specific as to detail. He also has problems with depression since 1983, and has treated with various psychiatrists in the Danbury area. The defendant also suffers from depression since 1993 or 1994. She treats on an infrequent basis. Both parties are on medication as a result of the depression problems. The defendant received inheritances from her grandfather and grandmother totaling $100,000 in December of 1997 and April of 1998. There are no funds remaining from this inheritance except for $10,000 being held in escrow. Mutual obligations of the parties were paid off with the inheritance as well as repairs to the home, etc.
The Court is aware of plaintiff's physical problems, but the defendant also has a history of medical problems. Normally, if this was a marriage of short duration, the question of alimony would not be a serious issue, particularly in view of plaintiff's health. The Court finds that the plaintiff has a present earning capacity of $28,000 per year. The Court also finds that because of plaintiff's medical problems and present earnings, that anything but a nominal order for alimony would not be warranted at this time, but the Court is not unmindful of the length of the marriage despite its lack of durability and stability from its early stages.
The Court, after hearing all of the evidence in this case, finds that each party is equally responsible for the breakdown of the marriage. From the beginning, the interest of the parties were dissimilar.
 ORDERS
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. The plaintiff shall pay to the defendant the sum of one ($1) dollar per year, until the first of any of the following events: (a) death of the defendant; (b) remarriage of the defendant; (c) cohabitation with another in accordance with the Connecticut CT Page 11580 General Statutes; (d) death of the plaintiff.
3. Both parties shall vacate the marital residence on or before August 30, 1999. Prior to that date, both parties should be responsible for moving all of their household furnishings and personal effects and any debris, to place it "broom clean" conditions. During the period of time that the parties are vacating, they shall engage contractors to do the following work: to tear up and remove the carpeting, and sand and refinish the wood flooring; to remove the underground oil tank; to paint the entire interior of the home; to repair both garage doors; and to remove the outside buildings and dispose of the same. Each party shall equally pay one-half of the cost to effectuate these repairs. If the parties cannot agree on the contractor to do the work, then the realtor shall select the contractor. After a contractor is selected, each party shall pay one-half of the expenses to do the repairs directly to the contractor.
If there are other additional costs to maintain the property, then until the sale of the residence, the parties shall equally share the cost of all necessary and reasonable repairs. No such repairs shall be undertaken without the prior written approval of both parties, time and circumstances permitting, which approval shall not be unreasonably withheld. Repairs are to include, but not limited to, the roof, foundation, framework, septic, plumbing, heating and electrical systems, exterior painting, driveway, and grounds.
Until closing, each party shall be responsible for paying one-half of the monthly installment on the first mortgage, taxes and homeowners insurance, and any utilities consumed.
The parties shall keep the real property insured against loss in an amount sufficient to cover the fair market value of the property.
Each party shall be entitled to 50 percent of the deductions in interest and taxes on their state and federal tax returns for the year 1999.
The property shall be listed for sale with Century 21, with the listing agent being Bonnie Lees. The parties will immediately execute a listing agreement listing the property for sale.
If the property remains on the market three months, the CT Page 11581 parties will confer to determine whether a new listing price should be set. The parties shall continue to re-examine the listing price every ninety days. At any review of the listing price, if the parties are unable to agree on a listing price, then each party shall select an appraiser who shall select a third appraiser whose determination as to listing price shall bind the parties. The parties shall equally share the cost of the appraisal. The parties shall cooperate to facilitate the property's prompt sale and shall continue to have the property listed for sale and the provisions of the listing agreement will provide for a lock box. In the event the parties are unable to agree on a submitted offer, then they shall accept any cash offer within 3 percent of the then listing price.
Upon the sale of the property, the following shall be paid prior to determining the net proceeds of sale: (a) state conveyance tax; (b) town conveyance tax; (c) attorney's fee to close; (d) realtor's commission; (e) first mortgage.
The then net proceeds shall then be paid one-half to the plaintiff and one-half to the defendant.
4. Defendant shall pay to plaintiff the sum of $15,000 representing the remainder of plaintiff's inheritance that was deposited in a joint account. Five thousand ($5000) dollars shall be paid from the closing proceeds and $10,000 paid forthwith from funds being held in escrow by the attorney for the defendant.
5. The plaintiff shall receive the 1989 Harley-Davidson and the 1998 Subaru. The defendant shall be entitled to all other vehicles.
6. Plaintiff shall be solely entitled to his personal injury settlement.
7. The parties' ERAs and 401K shall be added together and equally divided by way of a rollover payment. The Court shall retain jurisdiction to effectuate this transfer.
8. The net cash value of any life insurance policy shall be equally divided between the parties after considering all loans against such life Insurance policy.
9. Each party shall pay their own counsel fees connected with this action. CT Page 11582
10. The defendant is presently covered by a medical insurance policy through Groher. Defendant shall place the plaintiff on that policy as an additional insured so that he will be entitled to elect COBRA benefits, at his sole cost and expense after divorce. The plaintiff shall be responsible for any and all unreimbursed medical expenses incurred by him.
11. Each party shall pay the debts on their financial affidavits.
Owens, J.